15

1     Q.   Are you prepared to give complete,

2  unevasive, and binding answers on behalf of PES

3  and PWT with regard to Topic No. 2, which is the

4  legal and factual basis for defendants' contention

5  that their actions were based upon a reasonable,

6  good faith belief that their actions were not in

7  violation of the FLSA?

8     A.   Yes.

9     Q.   Are you prepared to give complete,

10 unevasive, and binding answers on behalf of PES

11 and PWT?

12          MR. HARVEY:

13               We'll stipulate that he's here to

14          testify and give answers, nonevasive and

15          binding answers, to all 15 topics.

16          MR. FILTEAU:

17               All right.

18     Q.   Do you understand that this deposition

19 is being taken not only of PES and PWT but also of

20 you in your individual capacity?

21     A.   Yes.

22     Q.   When was PES formed?

23     A.   I believe it was August of 2008.

24     Q.   And can you describe the corporate

25 structure of PES?

EXHIBIT A

20

1      A.    Yes.   There was only one company

2   underneath it.

3      Q.    And I think you said that Priority

4   Energy Services is no longer under Priority Energy

5   Holdings; is that true?

6      A.    It's no longer an active company.

7      Q.    And when did Priority Energy Services

8   cease to be an active company?

9      A.    The assets were sold July 20th, 2015.

10      Q.    And what happened to the liabilities?

11      A.    What do you mean?   Which liabilities?

12      Q.    Well, you said the assets of PES were

13   sold July 20, 2015.   Did those assets include the

14   company's liabilities?

15      A.    It was just an asset sale.

16      Q.    Okay.   So are the liabilities owned by

17   Priority Energy Holdings, or are they owned by

18   what is left of PES?

19            MR. HARVEY:

20                 Objection.   Calls for a legal

21            conclusion.

22      Q.    To the best of your knowledge.

23      A.    Within Priority Energy Services.

24      Q.    But PES as of today does not have any

25   assets?

Atkinson-Baker Court Reporters
www.depo.com

21

1     A.   Correct.

2     Q.   Now, I think you said earlier that at

3  the time PWT also became a wholly-owned subsidiary

4  of Priority Energy Holdings; is that true?

5     A.   No, it's not true.  It's majority held

6  by Priority Energy Holdings.

7     Q.   Okay.

8     (Exhibit 2 marked for identification.)

9  EXAMINATION BY MR. FILTEAU:

10     Q.   Let me hand you what's been marked

11  Exhibit 2 to your deposition.  Can you identify

12  Exhibit 2?

13     A.   The Articles of Organization.

14     Q.   Of PES?

15     A.   Yes.

16     Q.   And this is the company that was -- I

17  guess was it started by Chris Abide?  Was he the

18  actual person who started the company?

19     A.   Keith Andrews I believe started it, in

20  Chris' name maybe perhaps.  I'm not sure.

21     Q.   Okay.  Who's Chris Andrews?

22     A.   Keith Andrews.  He's the guy that signed

23  as organizer.

24     Q.   Okay.  Did he have anything to do with

25  running the company, or was he just the

Atkinson-Baker Court Reporters
www.depo.com

26

1    A.    There's currently debt outstanding with

2  Capital One.   It did not satisfy all the debt.

3    Q.    Okay.   And is that debt solely related

4  to PES, or is it related to the holding company or

5  to other divisions?

6    A.    All debt was held in the holding

7  company.   The bank notes were held in the holding

8  company.

9    Q.    Okay.

10    (Exhibit 4 marked for identification.)

11 EXAMINATION BY MR. FILTEAU:

12    Q.    Mr. Duplechin, let me show you what's

13 been marked as Exhibit 4 to your deposition.   Do

14 you recognize Exhibit 4?

15    A.    I do.

16    Q.    And what is it?

17    A.    It's the Certificate of Formation for an

18 LLC for Priority Well Testing, LLC.

19    Q.    And Priority Well Testing, LLC was

20 formed in Texas, correct?

21    A.    Correct.

22    Q.    It looks like it had five managers --

23 Chris Abide, you, Kelly Raper, Dustin Nichols, and

24 Russ Bird, correct?

25    A.    Correct.

Atkinson-Baker Court Reporters
www.depo.com

27

1    Q.    Does the company have five managers

2  today?

3    A.    The assets were sold Friday.  So the

4  company now has no assets.  Russell Bird is with a

5  new company that purchased the assets.  Dustin

6  Nichols left.  Chris Abide is no longer working

7  with Priority Well Testing, neither is Kelly

8  Raper.

9    Q.    So the assets were sold on November

10  11th?

11    A.    Yes.

12    Q.    And Russell Bird is with the new company

13  that purchased those assets?

14    A.    Correct.

15    Q.    What's the name of the company that

16  purchased the assets?

17    A.    I think it's K&B Well Testing or K&B

18  Oilfield Services.  I forget.

19    Q.    And Chris Abide is no longer handling

20  anything related to PWT?

21    A.    Correct.  It's a dormant company, no

22  working assets.  So there might be some wind-up

23  business but not active.

24    Q.    Was Russell Bird an officer with K&B

25  prior to purchasing the assets where he formed K&B

30

1    Airgas Priority Nitrogen.

2         Q.    And Airgas Priority Nitrogen isn't

3    associated with the Airgas that bought the assets

4    of PES, correct?

5         A.    It is associated with it.

6         Q.    It is?

7         A.    Yes.

8         Q.    So Mr. Abide's company purchased the

9    assets of PES?

10        A.    Airgas purchased the assets of PES.

11   Chris Abide was retained to run that company.

12        Q.    In what position?

13        A.    President.

14        Q.    When PWT was a going concern under the

15   holding company of Priority Energy Holdings, who

16   had final decision-making authority of PWT?

17        A.    Who had final decision-making of PWT?

18   The board of Priority Energy Holdings.

19        Q.    And who were the managing members of

20   PWT?

21        A.    Russell Bird.

22        Q.    Russell Bird.  Was he in charge of --

23        A.    He's the vice president of Well Tests.

24   He ran day-to-day operations.

25        Q.    Okay.  When did Russell Bird begin

Atkinson-Baker Court Reporters
www.depo.com

31

1   running PWT?

2        A.   He ran the well test division when it

3   was included within the Priority Energy Services

4   company.  We acquired the assets of Stomaco I

5   believe in early 2011, and Russell Bird was

6   managing the company then, and we retained him to

7   manage the Well Tests.

8        Q.   So he started managing Well Tests in

9   2011?

10        A.   With the acquisition of Stomaco.

11        Q.   So the answer to my question is yes?

12        A.   As soon as he became an employee of

13   Priority Energy Services, he was managing the Well

14   Test company.

15        Q.   I guess HE was formerly employed with

16   Stomaco; is that true?

17        A.   Correct.

18        Q.   Now, who is your employer as you sit

19   here today?

20        A.   Airgas Priority Nitrogen is my

21   employer.

22        Q.   So you report to Russell Bird, or do you

23   report to Chris Abide?

24        A.   Airgas Priority Nitrogen has nothing to

25   do with any of these guys.

Atkinson-Baker Court Reporters
www.depo.com

63

1    9 is another memo from Russell Bird to all

2    employees, true?

3        A.   Yes.

4        Q.   And the date on this document is January

5    16, 2015, correct?

6        A.   Correct.

7        Q.   And Mr. Bird writes that "we met with

8    several of our customers about next year's

9    business," And, "We were told that we will have

10   to reduce our pricing in order to keep their

11   work." This is a reflection that the market is

12   tightening up, true?

13       A.   Correct.

14       Q.   He then indicates that the Level 6 and 7

15   day rates for Odessa and Pleasanton are going to

16   be brought back down to what they were before he

17   wrote Exhibit 8, true?

18       A.   Correct.

19       Q.   And then he writes that Level 4 and 5

20   salaries are going to be converted to hourly,

21   true?

22       A.   True.

23       Q.   Were you involved in the discussions

24   that led to the decision to pay Levels 4 and 5 by

25   the hour rather than salary?

64

1      A.    I was.

2      Q.    And what was the factual basis for

3   changing Levels 4 and 5 from salary to hourly?

4           MR. HARVEY:

5                Let me caution the witness that if

6                any of the decision was made in

7                conjunction with consulting an attorney,

8                I'm going to instruct you not to answer

9                it.

10     Q.    I don't want to know anything about your

11   discussions with an attorney.  All I want to know

12   is the company's factual basis for changing the

13   salaries of Level 4 and 5 employees to an hourly

14   rate.

15          MR. HARVEY:

16               And I'm going to give you the same

17               instruction.  If the factual basis and

18               legal basis are intertwined and was part

19               of the discussion with an attorney, I'm

20               going to instruct you not to answer.

21     A.    I'm going to follow the advice.

22          MR. FILTEAU:

23               All right.  We're going to have to

24               come back.

25     Q.    Is your answer going to be the same for

65

1    the legal basis for changing Levels 4 and 5 from a

2    salary to an hourly basis?

3             MR. HARVEY:

4                  I'm going to make the same caution.

5             And I'm also going to object on

6             relevance and instruct you not to

7             answer.

8        Q.   Are you going to follow your attorney's

9    advice?

10       A.   Yes.

11       Q.   A little bit down on the memo that's

12   attached as Exhibit 9, Mr. Bird writes that,

13   "Previously, with hourly pay, we have credited

14   employees 21 hours each day on location."  He

15   says, "We are raising that and will credit each

16   employee 24 hours for each day on location."  Were

17   you involved in the discussions to change that

18   policy?

19       A.   Yes.

20       Q.   And what led to that change?

21            MR. HARVEY:

22                 The same instruction.  If it

23            involves consultation with an attorney,

24            I'm going to instruct you not to answer

25            as privileged.

Atkinson-Baker Court Reporters
www.depo.com

66

1          THE WITNESS:

2               Yeah.

3      Q.    And with regard to the attorney who you

4  consulted with regard to the decisions to convert

5  salary to hourly for Levels 4 and 5, which is

6  reflected in Exhibit 9, would you identify the

7  name of that attorney?

8          MR. HARVEY:

9               You can answer.

10     A.    I believe this is by the time that --

11  was it Munch -- when Micheal was involved.

12     Q.    So Micheal Harvey was one of the

13  attorneys that you're referring to?

14     A.    I believe it was about this time.

15     Q.    Any other attorneys whose opinions you

16  were relying on?

17     A.    No.

18     Q.    And can you tell me the dates of

19  consultation with your attorney?

20     A.    I can't recollect.

21     Q.    Can you tell me the names of the

22  Priority employees who were consulting with the

23  attorney?  And this is Mr. Harvey I'm referring

24  to.

25     A.    Mostly it was myself and Deb King.

Atkinson-Baker Court Reporters
www.depo.com

67

1     Q.    You say "mostly."  Were there other

2     employees involved?

3     A.    Chris Abide was the president.  So he

4     was in some of these conversations.

5     Q.    And with regard to these changes that

6     are referenced in Exhibit 9, were there documents

7     generated either by Mr. Harvey or his office and

8     Priority discussing these changes?

9     A.    Documents?

10    Q.    E-mails, letters, that sort of thing?

11    A.    Possibly.  We had a lot of phone

12    calls.

13    Q.    You're not sure if there was anything in

14    writing?

15    A.    I'm sure there was e-mails, but, you

16    know, again, a lot of this was over conference

17    calls.

18    Q.    Would those e-mails still be in

19    existence today?

20    A.    Possibly.

21    Q.    Is there a reason why some of them would

22    have been deleted?

23          MR. HARVEY:

24              Objection.  Don't answer that.

25    Q.    You want to follow your attorney's

Atkinson-Baker Court Reporters
www.depo.com

68

1    instruction?

2         A.    Right.

3         Q.    Mr. Bird also writes at the bottom of

4    Exhibit 9 that, "As in the past, employees need to

5    remember to clock in before leaving to work in the

6    field and then clock out when they are relieved to

7    return home."  Do you see that?

8         A.    I do.

9         Q.    Do you know whether Allen and Harris

10   were required to clock in before leaving to work

11   in the field and then clock out when they were

12   relieved to return home?

13        A.    I'm not sure since they were salary.

14        Q.    Who would know that information?

15        A.    Russell Bird.

16        Q.    Would Debbie King also actually have

17   possession of the clock in and clock out reports?

18             MR. HARVEY:

19                  Objection.  It assumes facts not in

20             evidence.  It assumes that the records

21             of Mr. Allen and Mr. Harris exist.  The

22             witness has testified he doesn't know if

23             they were required to clock in or out.

24        Q.    If they were required to clock in or

25   out, would those records be in the care, custody,

Atkinson-Baker Court Reporters
www.depo.com

121

1      Q.   Okay.  And on August 22nd, 2012, who

2   employed Debbie King?

3      A.   Energy Services.

4      Q.   And was her position HR?

5      A.   Yes.

6      Q.   Was she head of HR?

7      A.   I mean, we were a small company so she

8   handled that among other things.

9      Q.   And who did she report to?

10      A.   We didn't really have a clear

11   organization structure.  Again, we were a small

12   company.  I managed a lot of her work.  So I guess

13   you could say me.

14      Q.   Did she have any employees that reported

15   to her?

16      A.   No.

17      Q.   And I think earlier you said that you

18   did not remember who Micheal Tusa -- what his firm

19   name was; is that true?

20      A.   Correct.

21      Q.   But he was an outside lawyer?

22      A.   Correct.

23      Q.   And this -- I don't want to know about

24   any attorney-client privilege information.  But it

25   says in the Description, "E-mail regarding legal

EXHIBIT A

122

1    advice relating to legal proceedings."  Was there

2    an actual lawsuit going on at the time?

3         A.   No.

4         Q.   Okay.  Do you know what legal

5    proceedings were going on, if any?

6              MR. HARVEY:

7                   Objection.  I'm going to instruct

8              you not to answer that one.

9         A.   I'm not going to answer.

10             MR. HARVEY:

11                  Based on privilege.

12        Q.   On April 27, 2015, another e-mail was

13   sent, this time from Dennis Clifford to Debbie

14   King with a cc to John Collins.  Do you see

15   that?

16        A.   Uh-huh (affirmatively).

17        Q.   Is that a "yes"?

18        A.   Yes.

19        Q.   Who is Dennis Clifford?

20        A.   The name does not ring a bell.

21        Q.   You don't know who he is?

22        A.   No.  It might be related to that coil

23   tubing.

24        Q.   But you're not sure?

25        A.   Not sure.

124

1      A.    You promise?

2      Q.    Promise.

3      (Exhibit 16 marked for identification.)

4   EXAMINATION BY MR. FILTEAU:

5      Q.    Let me hand you what's been marked as

6   Plaintiff's Exhibit 16.  Have you seen that

7   document before?

8      A.    I have.

9      Q.    And when did you see this document the

10  first time?

11          MR. HARVEY:

12              Objection.  I'm going to instruct

13          you not to answer.

14          MR. FILTEAU:

15              Are you claiming attorney-client

16          privilege on this document?

17          MR. HARVEY:

18              Yes.  Any transfer of this document

19          from you to them indicated by -- or from

20          us to them would be privileged and a

21          part of work product and client

22          communication.

23      Q.    Did you have any discussions with

24  Mr. Abide about Plaintiff's Exhibit 16 that was

25  not attended by an attorney?

Atkinson-Baker Court Reporters
www.depo.com

125

1      MR. HARVEY:

2           I'm going to object and instruct you

3           not to answer.

4   A.   I'm following the advice of counsel.

5   Q.   I'm not asking you anything about your

6   discussions with your attorney.  I'm asking you if

7   you had a meeting to discuss Plaintiff's Exhibit

8   16 with anyone within the company who is not a

9   lawyer and that meeting was not attended by an

10  attorney.

11     MR. HARVEY:

12          And I'm going to object as

13          privileged.  The document was provided

14          to counsel.  Any relay of this document

15          to any Priority employees and discussion

16          of it, especially at that high level of

17          President, CFO, would be privileged.

18  (Exhibit 17 marked for identification.)

19  EXAMINATION BY MR. FILTEAU:

20  Q.   Let me hand you what's been marked as

21  Plaintiff's Exhibit No. 17.  Are you going to

22  refuse to answer any questions about Plaintiff's

23  Exhibit 17 due to the privilege being asserted by

24  your attorney?

25     MR. HARVEY:

126

1              We're not going to prospectively

2          assert privileges.  If you have

3          questions that are not privileged, we'll

4          answer them.

5      Q.    Were you a participant in any

6  discussions with regard to how to respond to

7  Plaintiff's Exhibit 16?

8          MR. HARVEY:

9              We are going to object to that

10         question as privileged and instruct you

11         not to answer.

12         THE WITNESS:

13             Yeah.

14     Q.    And did you have any meetings not

15  attended by an attorney with regard to how to

16  respond to Plaintiff's Exhibit 16?

17         MR. HARVEY:

18             Same objection.  Instruct you not to

19         answer.

20     A.    I'm not going to answer.

21     Q.    Do you know who approved Plaintiff's

22  Exhibit 17 before it went out?

23         MR. HARVEY:

24             The same objection.

25     A.    Yeah, I'm objecting.

Atkinson-Baker Court Reporters
www.depo.com

127

1     Q.    Do you know if Plaintiff's Exhibit 17

2   was approved by the head of Priority before it

3   went out?

4           MR. HARVEY:

5               The same objection.  Instruct you

6           not to answer.

7     A.    I'm not going to answer.

8     Q.    Have you ever been a witness or a party

9   to other lawsuits?

10    A.    I've been deposed once before.

11    Q.    And what kind of case was that?

12    A.    Trademark case.  Or a patent case.

13    Q.    And who were you employed by when you

14   gave that deposition?

15    A.    Priority.

16    Q.    Was that fairly recent?

17    A.    It was probably three or four years

18   ago.

19    Q.    And what was the nature of your

20   involvement in that case?  Were you simply a

21   witness?

22    A.    Just a corporate, a general corporate --

23   Basically the same thing here.

24    Q.    You were a corporate representative?

25    A.    Correct.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| MICHEAL ALLEN, NATHAN SCOTT HARRIS | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | Civil Action No. 7:16-cv-47-DAE |
| | § | |
| PRIORITY ENERGY SERVICES, LLC and PRIORITY WELL TESTING, LLC | § | **JURY DEMANDED** |
| | § | |
| **Defendants.** | § | |

**PLAINTIFFS' NOTICE OF INTENT TO TAKE ORAL
DEPOSITION OF PRIORITY ENERGY SERVICES, LLC AND
PRIORITY WELL TESTING, LLC**

TO:   Defendants Priority Energy Services, LLC and Priority Well Testing, LLC, by and through their attorneys of record, Daniel Pipitone, Michael A. Harvey, Brenna Hill, Munsch Hart Kopf & Harr, P.C., 700 Milam, Suite 2700, Houston, Texas 77002.

PLEASE TAKE NOTICE that on Tuesday, November 15, 2016, beginning at 9:30 a.m., pursuant to F.R.C.P. 30(b)(6), Plaintiffs Micheal Allen and Nathan Scott Harris will take the oral deposition of Priority Energy Services, LLC and Priority Well Testing, LLC, ("Priority"), by and through its designated corporate representative identified as Alex Duplechin, on the following topics:

(1)    Defendants' organizational structure and management;

(2)    The legal and factual basis for Defendants' contention that their actions were based upon a reasonable, good faith belief that their actions were not in violation of the FLSA;

(3)    The legal and factual basis for Defendants' contention that they did not willfully violate the FLSA;

(4)    The legal and factual basis regarding any claimed exemption to Plaintiffs' overtime pay by Defendants;



**PLAINTIFF'S EXHIBIT**
_____1_____

(5)    The legal and factual basis underlying any of Defendants' defenses and affirmative defenses;

(6)    Defendants' analysis or investigation of whether Plaintiffs' position was exempt under the FLSA; including:

    (a)    The identity of individuals (internally or externally) who provided information or handled decision-making regarding exemption;

    (b)    The dates that Defendants (and their agents) made any investigation, decision, or review;

    (c)    The facts relied upon to determine that Allen's position was exempt under the FLSA; and

    (d)    The facts relied upon to determine that Harris' position was exempt under the FLSA.

(7)    The identity of the person(s) in charge of FLSA compliance for Defendants;

(8)    Other internal or external complaints, investigations, lawsuits, or citations regarding allegations of Defendants' violation of federal and state laws and regulations concerning the payment of wages, including the Fair Labor Standards Act;

(9)    Defendants' discovery responses and production;

(10)    Defendants' record keeping practices regarding documents and communications;

(11)    Time worked by Plaintiffs including:

    (a)    Methods for tracking and reporting time spent working;

    (b)    Most accurate methods for determining the hours actually worked by Plaintiffs;

(12)    The identities of individuals who may have personal knowledge regarding the subject matter of this lawsuit;

(13)    Plaintiffs' employment, including:

    (a)    The on-boarding processes, job requirements, and training;

    (b)    Work schedule and hours worked;

    (c)    Job duties and responsibilities;

EXHIBIT A

(d)    Promotions and demotions;

(e)    Policies and procedures (written or unwritten) regarding any aspect of Plaintiffs' employment; and

(14)   Plaintiffs' compensation, including:

(a)    Wages, salaries, bonuses, and overtime;

(b)    Fringe and other benefits; and

(c)    Methods for tracking Plaintiff's compensation.

(15)   Plaintiffs' settlement offers and Defendants' response.

Priority Energy Services, LLC and Priority Well Testing, LLC have designated Alex Duplechin as their corporate representative to testify pursuant to F.R.C.P. 30(b)(6), and Priority has been notified that it must prepare the witness so he will give complete, unevasive and binding answers on behalf of Priority regarding the above-referenced topics. The witness will also be deposed in his individual capacity.

The deposition will take place at the Regus Business Center, 201 Saint Charles Avenue, Suite 2500, New Orleans, La. 70170, continuing day-to-day until completed, stenographically recorded by a court reporter, and may be videotaped. You are invited to attend and cross-examine. Said deposition, when completed, is intended to be used as evidence at trial of this action, or for any other lawful and proper purpose.

3

EXHIBIT A

Respectfully submitted,

THE LAW OFFICES OF FILTEAU & SULLIVAN, LTD, LLP

/s/Robert J. Filteau
Robert J. Filteau
State Bar No. 06997300
John A. Sullivan III
State Bar No. 19483500
9894 Bissonnet Street
Suite 865
Houston, Texas 77036
(713) 236-1400 Telephone
(713) 236-1706 Telecopier

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Notice of Intent to Take Oral Deposition has been sent to all known counsel of record via certified mail, return receipt requested and/or facsimile and/or electronic mail delivery on this 14th day of October, 2016.

Daniel Pipitone
Michael A. Harvey
Brenna Hill
Munsch Hart Kopf & Harr, P.C.
700 Milam, Suite 2700
Houston, Texas 77002

/s/Robert J. Filteau
Robert J. Filteau

4

EXHIBIT A

May 21 2013 09:15AM Priority Odessa Fax 4325619589                   page 14



| PRIORITY | Personnel Action Form | HSE 100-17 |
| --- | --- | --- |
| | | 10/08/2012 |

### Employee Personal Data

**Name** (Last, First, MI) *Micheal  Allen  C.*

**SSN**

**Date of Birth:** mm/dd/yyyy

**Date of Hire:** mm/dd/yyyy *5/21/2013*

**Business:** Nitrogen    Wireline    (Well Testing)  Corporate
(circle)   Coiled Tubing  Production  Equipment  Lifts
         Roustabout  Vac Services  Water Transfer

**Office Location:** *MIDLAND, TX. Odessa TX*

### Employee Contact Information (Section must be completed for all actions)

**Street Address** *P.O Box 61606*

**City** *Lafayette*

**State** *LA*

**Zip Code** *70596*

**E-mail Address** *icormier @ cox.net*

**Home Phone** *(337) 962-6953*

**Cell Phone** *(337) 962-5583*

**Emergency Contact Name** *Inea Allen*

**Contact Phone** *SAME as above*

**Relationship** *wife*

### Type of Personnel Action (circle one)

| New Hire / Rehire | Pay Rate: *4000 month $375 Day* | Job Title: Level 6: Sr. Operato *Supervisor* | Division: *Well Testing* |
| --- | --- | --- | --- |
| | Phone Allowance: YES /(NO) Amount: *(00.55/MI)* | Vehicle Allowance: YES /(NO) Amount: *$500.00* | Other: (Bonus, Vacation, etc) *HS: 402* |

| Job Change | Current Title: | Current Department: |
| --- | --- | --- |
| | New Title: | New Department: |

| Pay Rate Change | Current Monthly Rate: | Current Hourly Rate: | Current Day Rate: |
| --- | --- | --- | --- |
| | New Monthly Rate: | New Hourly Rate: | New Day Rate: |
| | Reason:   Merit        Job Reclassification   Other (explain) |
| | Promotion   Additional Duties |

| Termination | Involuntary Termination   Reason: |
| --- | --- |
| | Resignation |
| | Reduction in Workforce |
| | Job Abandonment   If (no call/no show), list a minimum of 3 occurrences below. |
| | 1                    2                    3 |

| Leave of Absence | Reason for leave: |
| --- | --- |

| Time Off Request | Date From:   Date To:   Total # Days   Type:   PTO   Excused Time without Pay |
| --- | --- |

### Collect From Employee Upon Termination of Employment

| Keys | Gas/Credit Card(s) | Assigned Manual(s) |
| --- | --- | --- |
| Computer w/Accessories | Cell Phone | Other |
| Tools & Supplies | Life Vest | |

### Explain to Employee Upon Termination

| Payment of Earned Wages | Eligibility for Rehire |
| --- | --- |
| Group Insurance/COBRA | Reason for Separation |
| Unemployment Rights | Other |

**Comments:**

| Employee's Signature | DATE | Prepared/Hiring Mgr Signature | DATE |
| --- | --- | --- | --- |
| | *5/21/13* | | |

| | DATE | | DATE |
| --- | --- | --- | --- |
| **Effective Date:** | | **Last Date Worked:** | |

PLAINTIFF'S EXHIBIT
5
tabbies

PRIORITY 000608

EXHIBIT A

*unwilled to be 2-18-14*

 **PRIORITY**

| Personnel Action Form | HSE 100-17 |
|---|---|
| | 10/08/2012 |

## Employee Personal Data

**Name** (Last, First, MI): Allen, Michael

**Date of Birth:** mm/dd/yyyy

**SSN**

**Date of Hire:** mm/dd/yyyy — 5.21.13

**Business:** ( circle )   Nitrogen   Wireline   (Well Testing)   **Office Location:** Odessa
Alaska   Holdings   Equipment
Artificial Lifts   Coiled Tubing   Production

## Employee Contact Information

**Street Address**

| City | State | Zip Code |
|---|---|---|
| E-mail Address | Home Phone | Cell Phone |
| Emergency Contact Name | Contact Phone | Relationship |

## Type of Personnel Action (circle one)

**New Hire / Rehire**
Pay Rate: (Hourly/Monthly please specify) | Job Title: | Division:
Phone Allowance : YES / NO  Amount: | Vehicle Allowance: YES / NO  Amount: | Day Bonus Rate:

**Job Change**
Current Title: | Current Department:
New Title: | New Department:

**(Pay Rate Change)**
Current Monthly Rate: | Current Hourly Rate: | Current Day Rate: 375
New Monthly Rate: | New Hourly Rate: | New Day Rate: 500

Reason: | Merit | ✓ Job Reclassification | Other (explain)
| Promotion | Additional Duties |

**Termination**
Involuntary Termination   Reason:
Resignation
Reduction in Workforce
Job Abandonment   If (no call/no show), list a minimum of 3 occurrences below.
1 | 2 | 3

**Leave of Absence**
Reason for leave:

**Time Off Request**
Date From: | Date To: | Total # Days | Type:   PTO   Excused Time without Pay

## Collect From Employee Upon Termination of Employment

| Keys | Gas/Credit Card(s) | Assigned Manual(s) |
|---|---|---|
| Computer w/Accessories | Cell Phone | Other |
| Tools & Supplies | Life Vest | |

## Explain to Employee Upon Termination

| Payment of Earned Wages | Eligibility for Rehire |
|---|---|
| Group Insurance/COBRA | Reason for Separation |
| Unemployment Rights | Other |

Comments:

| Employee's Signature | DATE | Preparer/Hiring Mgr. Signature | DATE |
|---|---|---|---|
| | 2-18-14 | Jordan | 2-18-14 |
| **Sr. Mgr. Approval** | DATE | **Today's Date** | |
| **Effective Date:** 3.1.14 | | **Last Date Worked:** | |

EXHIBIT A

 **PRIORITY** | Personnel Action Form | HSE 100-17
10/08/2012

### Employee Personal Data

**Name** (Last, First, MI) Harris Nathan S

**Date of Birth:** mm/dd/yyyy

**SSN**

**Date of Hire:** mm/dd/yyy 05/20/2013

**Business:** ( circle ) Nitrogen   Coiled Tubing   Roustabout | Wireline   Production   Vac Services | Well Testing   Equipment   Water Transfer | Corporate   Lifts

**Office Location:** Odessa

### Employee Contact Information (Section must be completed for all actions)

**Street Address** 3003 706 S. Kenneth

**City** Mmohans | **State** TX | **Zip Code** 79756

**E-mail Address** nsharris@rocketmail.com | **Home Phone** 432-614-7049 | **Cell Phone** 432-614-7049

**Emergency Contact Name** 432-614-7782 | **Contact Phone** Bonnie Harris | **Relationship** wife

### Type of Personnel Action (circle one)

| | | |
|---|---|---|
| **New Hire /** **Rehire** | **Pay Rate:** 400.00 | **Job Title:** Level 6 S. Operator   **Division:** Well Test |
| | **Phone Allowance:** YES / NO   **Amount:** 100.00 | **Vehicle Allowance:** YES / NO   **Amount:**   **Other:** (Bonus/Vacation, etc) H2S: 40/day |
| **Job Change** | Current Title: | Current Department: |
| | New Title: | New Department: |
| **Pay Rate Change** | Current Monthly Rate: | Current Hourly Rate: | Current Day Rate: |
| | New Monthly Rate: | New Hourly Rate: | New Day Rate: |
| | Reason:   Merit   Promotion | Job Reclassification   Additional Duties | Other (explain) |
| **Termination** | Involuntary Termination   Reason:   Resignation   Reduction In Workforce   Job Abandonment   If (no call/no show), list a minimum of 3 occurrences below. | | |
| | 1 | 2 | 3 |
| **Leave of Absence** | Reason for leave: | | |
| **Time Off Request** | Date From:   Date To:   Total # Days   Type:   PTO   Excused Time without Pay | | |

### Collect From Employee Upon Termination of Employment

| | | |
|---|---|---|
| Keys | Gas/Credit Card(s) | Assigned Manual(s) |
| Computer w/Accessories | Cell Phone | Other |
| Tools & Supplies | Life Vest | |

### Explain to Employee Upon Termination

| | |
|---|---|
| Payment of Earned Wages | Eligibility for Rehire |
| Group Insurance/COBRA | Reason for Separation |
| Unemployment Rights | Other |

Comments:

**Employee's Signature** | **DATE** 5-15-13 | **Preparer/Hiring Mgr. Signature** | **DATE**

**Sr. Mgr. Approval** | **DATE** 5-20-13 | **Today's Date:**

**Effective Date:** | **Last Date Worked:**

 tabbies PLAINTIFF'S EXHIBIT 64

EXHIBIT A



| EMPLOYEE SEPERATION FORM | PHR-ESF |
|---|---|
| | 01/03/13 |

## Employee Personal Data

**Name** (Last, First, MI) *Allen, Michael*

**SSN**

**Date of Hire:** mm/dd/yyyy *05.21.2013*
**Last Day Worked:** mm/dd/yyyy *02.26.2014*

**Business Unit:** Nitrogen    Wireline    (Well Testing)    Corporate
(please circle)    Coiled Tubing    Production    Equipment    Lifts
Roustabout    Vac Services    Water Transfer

**Office Location:** *Odessa*

## Reason For Separation (Check One) – Provide Detailed Explanation

| ***** Quit ***** | ***** Discharge ***** | ***** Misc / Lack of Work ***** |
|---|---|---|
| Did not return, no notice/reason given | Using Intoxicant on Job | Lack of Work |
| No reason given | Intoxicated on the Job | Job Eliminated |
| Mutual Agreement (not protestable) | Failed Drug or Alcohol Test | Seasonal Employment |
| Quit during temporary assignment, no notice | Excessive Tardiness (give dates) | Location Closed |
| Failed to return from leave of absence | Left work without permission | Assignment Completed |
| Refused offer of work | Excessive Absences (give dates) | REMUNERATION PAID UPON OR AFTER SEPARATION |
| Three days unreported absence (provide dates) | Excessive Unreported Absences (dates) | |
| ✓ Accepted another job | Fighting on company property | VACATION PAY $:_____ |
| To Leave Area | Refused to perform job duties | Date From: |
| Personal | Misuse of Equipment | Date To: |
| Transportation Problems | Destruction of Company Property (Give property value) | Date Paid: |
| Baby sitter Problems | Violation of Company Policy | HOLIDAY PAY $:_____ |
| Due to Medical Reasons | Insubordination | Date From: |
| Dissatisfied – Hours Worked | Sleeping on Job | Date To: |
| Dissatisfied – Working Conditions | Inability to perform job (not protestable) | Date Paid: |
| Dissatisfied -- Performance Review | Unauthorized removal of company property | SEVERANCE PAY $:_____ |
| Dissatisfied – Career Opportunities | Violation of Safety Rules / Policy | Date From: |
| Dissatisfied – Co Workers | Cash Shortage | Date To: |
| Dissatisfied -- Supervisor | Improper Conduct | Date Paid: |
| Walked Off Job | Falsification of Records / Documents | |
| To Stay at Home | Failed to report to Work (give dates) | |
| Attend School | Not available for Work | |
| Joined Military | Discharge Other: | |
| Other: | | |

## Detailed Separation Remarks / Description – (Attach additional sheets if needed)

| Manager Signature | Date | HR Manager Signature | Date |
|---|---|---|---|
| *(signature)* | *2-27-14* | *Walena Hernandez* | *2-27-2014* |

 **PRIORITY**

| EMPLOYEE SEPERATION FORM | PHR-ESF |
|---|---|
| | 01/03/13 |

## Employee Personal Data

| Name (Last, First, MI) | Harris, Nathan S. | Date of Hire: mm/dd/yyyy | 5/20/2013 |
|---|---|---|---|
| SSN | | Last Day Worked: mm/dd/yyyy | 8/20/2013 |

**Business Unit:** Nitrogen  Wireline  ~~Well Testing~~  Corporate
(please circle)  Coiled Tubing  Production  Equipment  Lifts
Roustabout  Vac Services  Water Transfer

**Office Location:** Odessa TX

## Reason For Separation (Check One) – Provide Detailed Explanation

| ***** Quit ***** | ***** Discharge ***** | ***** Misc / Lack of Work ***** |
|---|---|---|
| Did not return, no notice/reason given | Using Intoxicant on Job | Lack of Work |
| No reason given | Intoxicated on the Job | Job Eliminated |
| Mutual Agreement (not protestable) | Failed Drug or Alcohol Test | Seasonal Employment |
| Quit during temporary assignment, no notice | Excessive Tardiness (give dates) | Location Closed |
| Failed to return from leave of absence | Left work without permission | Assignment Completed |
| Refused offer of work | Excessive Absences (give dates) | **REMUNERATION PAID UPON OR AFTER SEPARATION** |
| Three days unreported absence (provide dates) | Excessive Unreported Absences (dates) | |
| ✓ Accepted another job | Fighting on company property | VACATION PAY $: |
| To Leave Area | Refused to perform job duties | Date From: |
| Personal | Misuse of Equipment | Date To: |
| Transportation Problems | Destruction of Company Property (Give property value) | Date Paid: |
| Baby sitter Problems | Violation of Company Policy | HOLIDAY PAY $: |
| Due to Medical Reasons | Insubordination | Date From: |
| Dissatisfied – Hours Worked | Sleeping on Job | Date To: |
| Dissatisfied – Working Conditions | Inability to perform job (not protestable) | Date Paid: |
| Dissatisfied – Performance Review | Unauthorized removal of company property | SEVERANCE PAY $: |
| Dissatisfied – Career Opportunities | Violation of Safety Rules / Policy | Date From: |
| Dissatisfied – Co Workers | Cash Shortage | Date To: |
| Dissatisfied – Supervisor | Improper Conduct | Date Paid: |
| Walked Off Job | Falsification of Records / Documents | |
| To Stay at Home | Failed to report to Work (give dates) | |
| Attend School | Not available for Work | |
| Joined Military | Discharge Other: | |
| Other: | | |

## Detailed Separation Remarks / Description – (Attach additional sheets if needed)

| Manager Signature | Date | HR Manager Signature | Date |
|---|---|---|---|
| | | *[signature]* | 8/23/13 |

EXHIBIT A

| ⭐ PRIORITY | Personnel Action Form | HSE 100-17 |
|---|---|---|
| | | 10/08/2012 |

### Employee Personal Data

| Name (Last, First, MI) Harris, Nathan | Date of Birth: mm/dd/yyyy |
|---|---|
| SSN | Date of Hire: mm/dd/yyyy  2·10·14 |
| Business: ( circle ) Nitrogen   Wireline   ✓Well Testing   Alaska   Holdings   Equipment   Artificial Lifts   Coiled Tubing   Production | Office Location: Odessa |

### Employee Contact Information

| Street Address | | |
|---|---|---|
| City | State | Zip Code |
| E-mail Address | Home Phone | Cell Phone |
| Emergency Contact Name | Contact Phone | Relationship |

### Type of Personnel Action (circle one)

| New Hire / Rehire | Pay Rate: (Hourly/Monthly please specify) | Job Title: | | Division: |
|---|---|---|---|---|
| | Phone Allowance: YES / NO Amount: | Vehicle Allowance: YES / NO Amount: | | Day Bonus Rate: |
| Job Change | Current Title: | | Current Department: | |
| | New Title: | | New Department: | |
| (Pay Rate Change) | Current Monthly Rate: | Current Hourly Rate: | | Current Day Rate: 375 |
| | New Monthly Rate: | New Hourly Rate: | | New Day Rate: 500 |
| | Reason: | Merit | ✓ Job Reclassification | Other (explain) |
| | | Promotion | Additional Duties | |
| Termination | Involuntary Termination | Reason: | | |
| | Resignation | | | |
| | Reduction in Workforce | | | |
| | Job Abandonment | If (no call/no show), list a minimum of 3 occurrences below. | | |
| | 1 | 2 | | 3 |
| Leave of Absence | Reason for leave: | | | |
| Time Off Request | Date From: | Date To: | Total # Days | Type:   PTO   Excused Time without Pay |

### Collect From Employee Upon Termination of Employment

| Keys | Gas/Credit Card(s) | Assigned Manual(s) |
|---|---|---|
| Computer w/Accessories | Cell Phone | Other |
| Tools & Supplies | Life Vest | |

### Explain to Employee Upon Termination

| Payment of Earned Wages | Eligibility for Rehire |
|---|---|
| Group Insurance/COBRA | Reason for Separation |
| Unemployment Rights | Other |

Comments:

| Employee's Signature | DATE | Preparer/Hiring Mgr. Signature Nolan 2·18·14 | DATE |
|---|---|---|---|
| Sr. Mgr. Approval  R.E. | DATE 2·18·14 | Today's Date | |
| Effective Date: 3.1.14 | | Last Date Worked: | |

Posted 2/28

EXHIBIT A

 **PRIORITY.** | EMPLOYEE SEPERATION FORM | PHR-ESF
01/03/13

## Employee Personal Data

**Name**
(Last, First, MI) Harris, Nathan S

**SSN** .

**Business Unit:** Nitrogen    Wireline    Well Testing    Corporate
(please circle)  Coiled Tubing    Production    Equipment    Lifts
Roustabout    Vac Services    Water Transfer

**Date of Hire:**
mm/dd/yyyy  02/06/2014

**Last Day Worked:**
mm/dd/yyy .  09/11/2014

**Office Location:**  Odessa

## Reason For Separation (Check One) – Provide Detailed Explanation

| ***** Quit ***** | ***** Discharge ***** | ***** Misc / Lack of Work ***** |
|---|---|---|
| Did not return, no notice/reason given | Using Intoxicant on Job | Lack of Work |
| No reason given | Intoxicated on the Job | Job Eliminated |
| Mutual Agreement (not protestable) | Failed Drug or Alcohol Test | Seasonal Employment |
| Quit during temporary assignment, no notice | Excessive Tardiness (give dates) | Location Closed |
| Failed to return from leave of absence | Left work without permission | Assignment Completed |
| Refused offer of work | Excessive Absences (give dates) | **REMUNERATION PAID UPON OR AFTER SEPARATION** |
| Three days unreported absence (provide dates) | Excessive Unreported Absences (dates) | |
| X Accepted another job | Fighting on company property | VACATION PAY $:_____ |
| To Leave Area | Refused to perform job duties | Date From: |
| Personal | Misuse of Equipment | Date To: |
| Transportation Problems | Destruction of Company Property (Give property value) | Date Paid: |
| Baby sitter Problems | Violation of Company Policy | HOLIDAY PAY $:_____ |
| Due to Medical Reasons | Insubordination | Date From: |
| Dissatisfied -- Hours Worked | Sleeping on Job | Date To: |
| Dissatisfied -- Working Conditions | Inability to perform job (not protestable) | Date Paid: |
| Dissatisfied -- Performance Review | Unauthorized removal of company property | SEVERANCE PAY $:_____ |
| Dissatisfied -- Career Opportunities | Violation of Safety Rules / Policy | Date From: |
| Dissatisfied -- Co Workers | Cash Shortage | Date To: |
| Dissatisfied -- Supervisor | Improper Conduct | Date Paid: |
| Walked Off Job | Falsification of Records / Documents | |
| To Stay at Home | Failed to report to Work (give dates) | |
| Attend School | Not available for Work | |
| Joined Military | Discharge Other: | |
| Other: | | |

## Detailed Separation Remarks / Description – (Attach additional sheets if needed)

| Manager Signature | Date 9-11-14 | HR Manager Signature | Date |
|---|---|---|---|



September 11, 2013

Notice To Employees

Effective October 1, 2013 the pay structure will be changed for all Level I, II, and III employees. The purpose of this change is to comply with changing federal labor law requirements as well as to increase our ability and effectiveness in tracking personnel as they move from Level I to Level III. These employees will be paid on an hourly rate, calculated based on the monthly salary currently received.

In order to determine the applicable hourly pay rate conversion, we have consulted with our Payroll, HR and Management Departments, as well as, taken into consideration the effect these updates will have on our job bidding process and our ability to maintain competitiveness when quoting against other Well Test Service Companies. We feel the decisions made here are fair and in line with other companies that offer the same type of Well Test services as Priority.

The Hourly Rates are below:

| Level | Hourly Rate | Over Time Rate |
|-------|-------------|----------------|
| I     | 8.00        | 12.00          |
| II    | 9.00        | 13.50          |
| III   | 10.50       | 15.75          |

Employees must clock in at the office before leaving for location. If the employee is working at the shop, he/she must clock in and out daily. New Time Clocks are being installed for this purpose and will be up and running prior to the October 1 start date.

While an employee is working on location for a complete 24 hour cycle, he will have been considered working for 21 hours. This will account for any breaks, meals, sleep the employee will have while on location. Levels I, II and III will no longer have bonus day pay for field time or rig ups/rig downs and will be paid strictly on an hourly basis.

There will be no change to the Per Diem and H2S bonus policy. Employees will continue receiving this.

Thank you,

Russell Bird



PLAINTIFF'S EXHIBIT
16B

PRIORITY 001620

EXHIBIT A



1/16/15

MEMO

TO: All Employees

FROM: Russell Bird

RE: Pay Rate Changes

During the past couple of months we met with several of our customers about next year's business. We were told we will have to reduce our pricing in order to keep their work. This, along with other fluctuating market conditions and increased overhead due to insurance and taxes, has forced us to make some changes within our company. The change concerning PWT Field Operators is as follows:
Effective February 1, 2015

<u>Level 6 & Level 7</u> – Odessa and Pleasanton day rates will be brought back to match Henderson and College Station's rate of $375/day.

<u>Level 5</u> – Salary is converted to $15.00/hour and will no longer have a day bonus but will continue with perdiem and H2S perdiem. Overtime after 40 is 1 ½ time and Holiday Pay is 8 hours of regular pay in addition to the hours already worked. (Example: if you work 10 hours on a holiday, you will be paid 10 hours at $15.00/hour plus you will get an additional 8 hours of holiday pay at $15.00/hour)

<u>Level 4</u> – Salary is converted to $13.00/hour and will no longer have a day bonus but will continue with perdiem and H2S perdiem. Overtime after 40 is 1 ½ time and Holiday Pay is 8 hours of regular pay in addition to the hours already worked. (Example: if you work 10 hours on a holiday, you will be paid 10 hours at $13.00/hour plus you will get an additional 8 hours of holiday pay at $13.00/hour).

Previously, with hourly pay, we have credited employees 21 hours each day on location. We are raising that and will credit each employee 24 hours for each day on location. As in the past, employees need to remember to clock in before leaving to work in the field and then clock out when they are relieved to return home.

Also, there will be a freeze on pay raises for the first couple of months of 2015.

Thank you and we appreciate all you do for Priority Well Testing.



PLAINTIFF'S EXHIBIT
9

Michael Allen and Nathan Scott Harris vs. Priority Energy Services, LLC et al. Case No. 7:16-CV-00047-RAJ
Defendants' Privilege Log

| Email Send/Doc Date | Email From | Email To | Email CC | Description | Document Type | Priv/Reason |
|---|---|---|---|---|---|---|
| 8/22/2012 | Debbie Todd | Michael T. Tusa, Jr. | | Email regarding legal advice relating to legal proceedings | eMail | Work-Product; Attorney-Client Communication |
| 4/27/2015 | Dennis Clifford | Debbie King | John Collins | Email regarding legal advice relating to legal proceedings | eMail | Work-Product; Attorney-Client Communication |
| 3/15/2016 | Dennis Clifford | Debbie King | | Email regarding legal advice relating to legal proceedings | eMail | Work-Product; Attorney-Client Communication |
| ongoing | MHKH Attorneys/Staff | Priority Management | | Email regarding legal advice after commencement of litigation | eMail | Work-Product; Attorney-Client Communication |
| ongoing | MHKH Attorneys/Staff | MHKH Attorneys/Staff | | Internal emails regarding work product and legal advice after commencement of litigation | eMail | Work-Product; Attorney-Client Communication |



PLAINTIFF'S EXHIBIT