```
 1           IN THE UNITED STATES DISTRICT COURT
 2           FOR THE WESTERN DISTRICT OF TEXAS
 3                 MIDLAND-ODESSA DIVISION
 4   MICHEAL ALLEN, NATHAN      *
 5   SCOTT HARRIS               *
 6        Plaintiffs,           *
 7                              *
 8   v.                         *   Civil Action No.
 9                              *   7:16-cv-47-DAE
10   PRIORITY ENERGY            *
11   SERVICES, LLC and          *   JURY DEMANDED
12   PRIORITY WELL              *
13   TESTING, LLC               *
14        Defendants.           *
15
16      30(b)(6) DEPOSITION OF PRIORITY ENERGY SERVICES, LLC
17            AND PRIORITY WELL TESTING, LLC,
18         BY AND THROUGH ALEX BLAKE DUPLECHIN
19              TAKEN ON NOVEMBER 15, 2016
20                IN NEW ORLEANS, LOUISIANA
21
22   ATKINSON-BAKER, INC.
     COURT REPORTERS
23   (800) 288-3376
     www.depo.com
24   REPORTED BY: WILMA B. GERACI, CCR NO. 90001
25   JOB NO.: AA0B275
```

1

EXHIBIT C

```
 1            IN THE UNITED STATES DISTRICT COURT
 2            FOR THE WESTERN DISTRICT OF TEXAS
 3                  MIDLAND-ODESSA DIVISION
 4
 5   MICHEAL ALLEN, NATHAN      *
 6   SCOTT HARRIS               *
 7        Plaintiffs,           *
 8                              *
 9   v.                         *   Civil Action No.
10                              *   7:16-cv-47-DAE
11   PRIORITY ENERGY            *
12   SERVICES, LLC and          *   JURY DEMANDED
13   PRIORITY WELL              *
14   TESTING, LLC               *
15        Defendants.           *
16
17
18            30(b)(6) deposition of PRIORITY ENERGY
19   SERVICES, LLC AND PRIORITY WELL TESTING, LLC,
20   through its designated representative, ALEX BLAKE
21   DUPLECHIN, 681 River Highlands Boulevard,
22   Covington, Louisiana 70448, taken at the REGUS
23   BUSINESS CENTER, 201 St. Charles Avenue, Suite
24   2500, New Orleans, Louisiana 70170, on Tuesday,
25   November 15, 2016, commencing at 9:25 a.m.
```

```
 1    APPEARANCES:
 2
 3         THE LAW OFFICES OF FILTEAU & SULLIVAN
 4         BY:   ROBERT J. FILTEAU, ESQUIRE
 5         9894 Bissonnet Street
 6         Suite 865
 7         Houston, Texas 77036
 8         rfilteau@fso-lawpractice.com
 9              ATTORNEYS FOR PLAINTIFFS
10
11
12         MUNSCH HARDT
13         BY:   MICHAEL A. HARVEY, ESQUIRE
14         700 Milam Street
15         Suite 2700
16         Houston, Texas 77002
17         mharvey@munsch.com
18              ATTORNEYS FOR DEFENDANTS
19
20
21    REPORTED BY:
22
23         WILMA B. GERACI, CCR, RPR
24         CERTIFIED COURT REPORTER
25
```

1   Q.   What year did you graduate?
2   A.   2006.
3   Q.   And what was your degree in from LSU?
4   A.   Accounting.
5   Q.   Is that a Bachelor of Science?
6   A.   Yes.
7   Q.   Do you hold any other degrees?
8   A.   No.
9   Q.   Where did you graduate from high
10  school?
11  A.   Catholic High.
12  Q.   And what city is that located in?
13  A.   In Baton Rouge, Louisiana.
14  Q.   Do you have any other formal or informal
15  education since leaving LSU?
16  A.   No.
17  (Exhibit 1 marked for identification.)
18  EXAMINATION BY MR. FILTEAU:
19  Q.   Mr. Duplechin, let me hand you what's
20  been marked as Exhibit 1 to your deposition.  Your
21  deposition has been noticed as the deposition of
22  Priority Energy Services, LLC and Priority Well
23  Testing, LLC.  Do you understand that both and
24  Priority Energy Services, LLC and Priority Well
25  Testing, LLC have designated you as their

1  corporate representative to testify on a number of
2  topics as set forth in the Notice of Deposition?
3      A.   Yes.
4      Q.   If I refer to Priority Energy Services,
5  LLC during this deposition as PES, could we have
6  an agreement that I'm referring to Priority Energy
7  Services, LLC?
8      A.   Yes.
9      Q.   And if I refer to Priority Well Testing,
10 LLC as PWT during this deposition, can we have an
11 agreement that I'm referring to Priority Well
12 Testing, LLC?
13     A.   Yes.
14     Q.   Finally, if I refer to Micheal Allen as
15 Allen and Nathan Harris as Harris, can we have an
16 agreement that I'm referring to the plaintiffs in
17 this case?
18     A.   Yes.
19     Q.   I want to take you through each topic in
20 the Notice of Deposition.  Are you prepared to
21 give complete, unevasive, and binding answers on
22 behalf of PES and PWT with regard to Topic No. 1,
23 which is Defendants' organizational structure and
24 management?
25     A.   Yes.

        Q.   Are you prepared to give complete,
unevasive, and binding answers on behalf of PES
and PWT with regard to Topic No. 2, which is the
legal and factual basis for defendants' contention
that their actions were based upon a reasonable,
good faith belief that their actions were not in
violation of the FLSA?
        A.   Yes.
        Q.   Are you prepared to give complete,
unevasive, and binding answers on behalf of PES
and PWT?
              MR. HARVEY:
                   We'll stipulate that he's here to
              testify and give answers, nonevasive and
              binding answers, to all 15 topics.
              MR. FILTEAU:
                   All right.
        Q.   Do you understand that this deposition
is being taken not only of PES and PWT but also of
you in your individual capacity?
        A.   Yes.
        Q.   When was PES formed?
        A.   I believe it was August of 2008.
        Q.   And can you describe the corporate
structure of PES?

1   A.   Yes.
2   Q.   And would you agree with me that Nathan
3   Harris did make more than a hundred thousand
4   dollars in 2014?
5   A.   Yes.
6   Q.   Are there any other considerations that
7   form the legal basis for the defendant's
8   contention that the plaintiffs were exempt
9   employees under the highly compensated exemption
10  to the Fair Labor Standards Act?
11       MR. HARVEY:
12            Objection.  Legal conclusion.
13  A.   I can't think of anything.
14  Q.   And then if we go to the Tenth Defense
15  again, just to be sure.  This is the tenth defense
16  on page 6 of Exhibit 10.  It says, "Defendants
17  assert that Plaintiffs were exempt employees under
18  the Executive, Administrative and Highly
19  Compensated exemptions, as well as any other
20  exemptions found to apply."  Are you aware of any
21  other exemptions that the defendants are asserting
22  besides the three we have already discussed?
23  A.   Not to my knowledge.
24  Q.   What is a well test field ticket?
25  A.   It is the part of the paperwork that is

```
1    Q.   So that well is going to be perhaps
2  worked on in the near future?
3    A.   Correct.
4    Q.   Is that what you get from it?
5    A.   Correct.
6    Q.   And then what are the numbers we're
7  looking at where it says Total 400 and Per Well
8  1,600?
9    A.   Total is the day rate, the total revenue
10 for that day.  And then per well I think it's
11 cumulative.
12   Q.   So the total day rate of $400, is that
13 what EOG is paying Priority?
14   A.   Correct.
15   Q.   And the 2,968, is that what Energen is
16 paying Priority per day?
17   A.   Correct.
18   Q.   Going to page 2 --
19   A.   These are estimates.
20   Q.   These are estimates.  Okay.  Are these
21 numbers not used to actually bill EOG or
22 Energen?
23   A.   The field ticket is the final.  The
24 signed approved field ticket is what's finally
25 invoiced.  We don't invoice off of this report.
```

1  Q. I got you. Does the information that we
2  see in the Daily Job Report, does that come from
3  the field ticket or not?
4  A. The field tickets should be the
5  originator of all this information, this is
6  reflecting that, along with estimated, you know,
7  charges.
8  Q. So if you wanted to get as much
9  information as you could about a particular job,
10 would you consult the daily job report or would
11 you consult the field tickets?
12 A. I would consult the field tickets and
13 the logs.
14 Q. What are the logs?
15 A. The well logs. If you want to know
16 what's happening with the well, what are we doing,
17 are we monitoring -- Mainly the field tickets,
18 though.
19 Q. Okay. Is the well log an IEDC
20 document?
21 A. What is that?
22 Q. International -- Jeez, I used to know
23 what that meant. It's a drilling report
24 essentially.
25 A. I don't know.

```
 1    last page of Exhibit 11, those numbers are
 2    approximations you said?
 3        A.    Correct.
 4        (Exhibit 12 marked for identification.)
 5    EXAMINATION BY MR. FILTEAU:
 6        Q.    Let me hand you what's been marked as
 7    Plaintiff's Exhibit 12 to your deposition.
 8        A.    Can we take a rest room break?
 9        Q.    We sure can.
10        (Recess taken in the proceedings.)
11        MR. FILTEAU:
12            Back on the record.
13    EXAMINATION BY MR. FILTEAU:
14        Q.    I've handed you what's been marked
15    Plaintiff's Exhibit 12.  And I'm going to
16    represent to you that those are the Well Test
17    Field Tickets in date order, beginning on May
18    20th, 2013, with No. 14901 and ending on November
19    4th, 2014, with Field Ticket No. 32223.  And these
20    are the Well Test Field Tickets that we have been
21    talking about earlier in this deposition,
22    correct?
23        A.    Correct.
24        Q.    And these are documents that Priority
25    uses internally for determining what's going on at
```

 1   the well and for the purposes of collecting the
 2   money that the customer owes, true?
 3        A.   Correct.
 4        Q.   So if you would go to 14903.  So that's
 5   just about four or five field tickets in.
 6        A.   (Witness complies.)
 7        Q.   It's a Well Test Field Ticket dated May
 8   24th, 2013.  Are you with me?
 9        A.   I am.
10        MR. HARVEY:
11             I'm sorry.  What was the Bates
12        number?
13        MR. FILTEAU:
14             The Bates number at the bottom is
15        going to be Priority 247.
16        A.   What's the field ticket number?
17        Q.   And the field ticket number is 14905.
18             So if you go to that field ticket, you
19   will see that the field ticket shows at the bottom
20   the Lead Operator on the Job, Nathan Harris, and
21   then Technical, Mike Allen.  Do you see that?
22        A.   I do.
23        Q.   And then there's a description of what
24   they're doing.  I guess Job Scope, in the upper
25   left, says "coil washout"?

```
1       A.      Uh-huh (affirmatively).
2       Q.      Is that right?
3       A.      That is.
4       Q.      What is a coil washout?
5       A.      I believe it's coil being injected --
6  fluids being injected down hole.  I'm not a coil
7  tubing expert.
8       Q.      Okay.  Now, if you go to what we were
9  just looking at, which is Exhibit 11, and this is
10 your Daily Job Report.  And I'll take you to the
11 Daily Job Report which is marked as Plaintiff's
12 Exhibit 11 and going to the one that's Bates
13 stamped on the bottom Priority 001751.  Are you
14 with me?
15      A.      I am.
16      Q.      If the Daily Job Report shows that
17 Nathan Harris was working with D. Harris doing
18 flowback, why does the field ticket, the Well Test
19 Field Ticket, for May 24th, which is No. 14905,
20 show Nathan Harris working with Micheal Allen
21 doing coil washout on the same well?
22      A.      Again, this is the Bible (indicating).
23 This is just a --
24      Q.      And you're pointing to the Daily Job
25 Report?
```

1  A.  Correct. This is what's happening
2  on-site.
3  Q.  So when you say, "This is what's
4  happening on-site," you're putting your hand on
5  the Well Test Field Ticket?
6  A.  Correct.
7  Q.  Okay. So if there's a question as to
8  what document is more accurate, you're more
9  comfortable going with the Well Test Field
10 Ticket?
11 A.  Correct.
12 Q.  Okay. Now, the Customer Contact, upper
13 right, do you see that where it says Justin
14 Bynum?
15 A.  Yes.
16 Q.  Would he be what we've been talking
17 about as the company man?
18 A.  Correct.
19 Q.  And is that his signature where it has
20 Customer Signature?
21 A.  It is.
22 Q.  Now, in this particular case, -- and you
23 may not know the answer to this question -- can
24 you tell me who filled out the Well Test Field
25 Ticket, No. 14905?

1  Allen, or is it just a day rate you charge?
2      A.   Whatever we can get, if we can get some
3  ancillary charges that we -- I think sometimes
4  we've done a DOT charge or maybe a HazMat charge.
5  It's just kind of as much as we can get away with.
6  It's standard practice to charge a subsistence.
7  And we do -- Per our policy we do give each guy a
8  per diem.
9      Q.   I got you.
10          Now, the names that are on this Well
11 Test Field Ticket, obviously we've got Nathan
12 Harris and Mike Allen.  Are these the only two
13 people that were on this well on that day?
14     A.   It appears so.
15     Q.   And it looks like at the top it has a
16 starting time of 12 a.m. and an ending time for 12
17 a.m.  Does that mean they're on location for that
18 24-hour period?
19     A.   That's the time the field ticket was
20 being completed.  So I don't know if they were on
21 location this day that entire time for this
22 particular job.
23     Q.   Is there any way to tell from looking at
24 this document?
25     A.   No.  No, I don't.

1    A.    True.  It looks like he was pretty
2 consistent on the a.m. to a.m.  So I would think
3 this looks like it is probably half a day.  But I
4 don't know, again.
5    Q.    If you look at the Well Test Field
6 Tickets that start with Priority 247 and end with
7 264 -- So we're looking at the Bates number down
8 at the bottom, and we're looking at field ticket
9 numbers 14905 to 14922.  Are you with me?
10   A.    Yes.
11   Q.    Does it look like they worked all of
12 those days consecutively, both Harris and Allen?
13   A.    It does.
14   Q.    Is that pretty standard out in the
15 oilfield for these guys to work blocks of time
16 like that?
17   A.    It's fairly standard.
18   Q.    Earlier we talked about Exhibit 11,
19 which is the Daily Job Report.  Does the daily job
20 report -- I know you testified that it's not as
21 accurate as the Well Test Field Ticket, but would
22 it be accurate as to who is working on the well?
23   A.    Not all the time.
24   Q.    Not all the time.  So if I want to know
25 who is working on a well, I've got to refer to the

1  Well Test Field Tickets?
2      A.   That would be your best bet.
3      Q.   And the Well Test Field Tickets are
4  going to show me who all is out there at any given
5  day, true?
6      A.   Correct.
7      (Exhibit 13 marked for identification.)
8  EXAMINATION BY MR. FILTEAU:
9      Q.   Let me hand you what's been marked as
10 Plaintiff's Exhibit 13.  Plaintiff's Exhibit 13 is
11 the employee pay stubs for Micheal Allen.  I just
12 want to cover with you briefly how the day bonuses
13 are calculated for each pay period.  If you look
14 at the first pay stub, it's Bates stamped Priority
15 59.  It shows a pay period of 6-15 to 6-15 and a
16 pay date of 6-17.  So I guess this would have been
17 one of the earliest pay stubs he got.  Does it
18 look like that to you?
19     A.   I'm not sure.
20     Q.   It doesn't show a current amount, but it
21 shows a year-to-date amount?
22     A.   Yeah.  I guess you could make the
23 assumption that was his first paycheck.
24     Q.   And I don't see any day bonuses in
25 there.  Do you?

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| MICHEAL ALLEN, NATHAN SCOTT HARRIS | § § § § | |
| Plaintiffs, | § | |
| v. | § § | Civil Action No. 7:16-cv-47-DAE |
| PRIORITY ENERGY SERVICES, LLC and PRIORITY WELL TESTING, LLC | § § § § | JURY DEMANDED |
| Defendants. | § | |

### PLAINTIFFS' NOTICE OF INTENT TO TAKE ORAL DEPOSITION OF PRIORITY ENERGY SERVICES, LLC AND PRIORITY WELL TESTING, LLC

TO:  Defendants Priority Energy Services, LLC and Priority Well Testing, LLC, by and through their attorneys of record, Daniel Pipitone, Michael A. Harvey, Brenna Hill, Munsch Hart Kopf & Harr, P.C., 700 Milam, Suite 2700, Houston, Texas 77002.

PLEASE TAKE NOTICE that on Tuesday, November 15, 2016, beginning at 9:30 a.m., pursuant to F.R.C.P. 30(b)(6), Plaintiffs Micheal Allen and Nathan Scott Harris will take the oral deposition of Priority Energy Services, LLC and Priority Well Testing, LLC, ("Priority"), by and through its designated corporate representative identified as Alex Duplechin, on the following topics:

(1) Defendants' organizational structure and management;

(2) The legal and factual basis for Defendants' contention that their actions were based upon a reasonable, good faith belief that their actions were not in violation of the FLSA;

(3) The legal and factual basis for Defendants' contention that they did not willfully violate the FLSA;

(4) The legal and factual basis regarding any claimed exemption to Plaintiffs' overtime pay by Defendants;



(5) The legal and factual basis underlying any of Defendants' defenses and affirmative defenses;

(6) Defendants' analysis or investigation of whether Plaintiffs' position was exempt under the FLSA; including:

　(a) The identity of individuals (internally or externally) who provided information or handled decision-making regarding exemption;

　(b) The dates that Defendants (and their agents) made any investigation, decision, or review;

　(c) The facts relied upon to determine that Allen's position was exempt under the FLSA; and

　(d) The facts relied upon to determine that Harris' position was exempt under the FLSA.

(7) The identity of the person(s) in charge of FLSA compliance for Defendants;

(8) Other internal or external complaints, investigations, lawsuits, or citations regarding allegations of Defendants' violation of federal and state laws and regulations concerning the payment of wages, including the Fair Labor Standards Act;

(9) Defendants' discovery responses and production;

(10) Defendants' record keeping practices regarding documents and communications;

(11) Time worked by Plaintiffs including:

　(a) Methods for tracking and reporting time spent working;

　(b) Most accurate methods for determining the hours actually worked by Plaintiffs;

(12) The identities of individuals who may have personal knowledge regarding the subject matter of this lawsuit;

(13) Plaintiffs' employment, including:

　(a) The on-boarding processes, job requirements, and training;

　(b) Work schedule and hours worked;

　(c) Job duties and responsibilities;

(d) Promotions and demotions;

(e) Policies and procedures (written or unwritten) regarding any aspect of Plaintiffs' employment; and

(14) Plaintiffs' compensation, including:

(a) Wages, salaries, bonuses, and overtime;

(b) Fringe and other benefits; and

(c) Methods for tracking Plaintiff's compensation.

(15) Plaintiffs' settlement offers and Defendants' response.

Priority Energy Services, LLC and Priority Well Testing, LLC have designated Alex Duplechin as their corporate representative to testify pursuant to F.R.C.P. 30(b)(6), and Priority has been notified that it must prepare the witness so he will give complete, unevasive and binding answers on behalf of Priority regarding the above-referenced topics. The witness will also be deposed in his individual capacity.

The deposition will take place at the Regus Business Center, 201 Saint Charles Avenue, Suite 2500, New Orleans, La. 70170, continuing day-to-day until completed, stenographically recorded by a court reporter, and may be videotaped. You are invited to attend and cross-examine. Said deposition, when completed, is intended to be used as evidence at trial of this action, or for any other lawful and proper purpose.

Respectfully submitted,

THE LAW OFFICES OF FILTEAU & SULLIVAN, LTD, LLP

/s/Robert J. Filteau
Robert J. Filteau
State Bar No. 06997300
John A. Sullivan III
State Bar No. 19483500
9894 Bissonnet Street
Suite 865
Houston, Texas 77036
(713) 236-1400 Telephone
(713) 236-1706 Telecopier

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Notice of Intent to Take Oral Deposition has been sent to all known counsel of record via certified mail, return receipt requested and/or facsimile and/or electronic mail delivery on this 14th day of October, 2016.

Daniel Pipitone
Michael A. Harvey
Brenna Hill
Munsch Hart Kopf & Harr, P.C.
700 Milam, Suite 2700
Houston, Texas 77002

/s/Robert J. Filteau
Robert J. Filteau